UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANNY BROWN, | Case No.: 1:07 CV 3750 |
| Plaintiff | |
| v. | JUDGE SOLOMON OLIVER, JR. |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants | ORDER |

Now pending before the court in the above-captioned case is Plaintiff's Discovery Plan Concerning Qualified Immunity (ECF No. 125) and Defendants' Jamal Ansari, Robert Cross, Larry Faith, Lee Lucas, Matt Mayer, and Chuck Metcalf's Memorandum of Law in Opposition to Additional Discovery (ECF No. 126). For the following reasons, the court grants in part and denies in part Plaintiff's Discovery Plan.

## I. BACKGROUND

### A. Factual History

On December 31, 2004, the body of Timothy Harris was discovered in Richland County, Ohio, and the police believed that his death was drug related. After this discovery, the Richland County Sheriff's Office began investigating into the area's drug trade and brought in the DEA Task Force to help with the investigation. (Robert Cross Aff. at ¶ 11, ECF No. 50-2.) According to Defendant Cross, a DEA Agent, the police officers used Jerrell Bray, a paid DEA informant, to make controlled buys of crack cocaine from alleged drug dealers in the area. (*Id.* at ¶12.) The officers claim that Bray had previously been a reliable source.

On November 7, 2005, Bray allegedly told officials that he could purchase crack cocaine from Plaintiff Brown in Richland County. Bray made police-monitored calls to

Brown, or who the officers allegedly thought was Brown. (*Id.* at ¶ 13.) The Richland County Sheriff's Office made a compact disc containing a digital recording of all of the conversations between Bray and Brown. (*Id.*) Through these phone calls, Bray, supported by the various officials, set up a controlled buy with Brown. (*Id.* at ¶ 20.) According to Cross, on November 8, 2005, an unidentified person gave Bray 45.2 grams of a substance that tested positive for the presence of cocaine in exchange for $950.00. (*Id.* at ¶ 23.)

On March 15, 2006, Brown was charged with various violations of federal criminal drug laws. The officers also arrested and charged around twenty-two other individuals through a similar set-up using Bray as an informant. Brown's jury trial commenced on July 12, 2006, and Brown was found not guilty of any of the charges raised against him. Bray later admitted that the alleged drug buy between him and Brown never took place. He also allegedly admitted that the officers that he worked with helped initiate this fake drug deal in order to convict Brown and the other individuals arrested based on information provided by Bray. Following his confession, nearly all of those convicted because of Bray and the officers were released. (Plain Dealer, "Mansfield Drug Case Gone Wrong: The Inside Story", June 22, 2008, ECF No. 62-2.)

On May 11, 2009, an Information was filed against Defendant Metcalf. He was charged with intentionally violating the constitutional rights of Dwayne Nabors, an individual convicted as part of the Mansfield drug conspiracy. Metcalf plead guilty to the charge. On May 12, 2009, Defendant Lucas was indicted for his alleged role in the Mansfield investigation. He went to trial and was found not guilty of all charges. During his trial, all but one of the defendants in this case testified. There were more than 4,000 pages of trial transcript and more than 22,000 pages of exhibits admitted. These exhibits included the entire internal files of the United States Attorney's Office in Cleveland, United States Drug Enforcement Administration, Richland County Sheriff's Office, and other law enforcement agencies involved in the Mansfield cases. (Def. Mem. Of Law in Opp. at 3, ECF No. 126.)

Plaintiff Brown, in his Complaint, alleges that Defendants conspired against him to create false drug charges. He claims that the officers manipulated audio recordings of cell phone calls, which were used as evidence against him, and coached and manipulated witnesses to testify against him. Brown also alleges that he was improperly subjected to a judicial proceeding, and suffered emotional and monetary damages as a result of these officers' conduct. Furthermore, Brown contends that he was one of many individuals who were wrongfully charged with various drug offenses as a part of a scheme created by Defendants.

### B. Procedural History

On December 7, 2007, Plaintiff instituted the current action, asserting the following claims against Defendants: (1) violation of Plaintiff's constitutional rights; (2) malicious prosecution, and (3) intentional infliction of emotional distress. Following a case management conference, this court ordered that the parties exchange initial disclosures on April 30, 2008. On April 29, 2008, Defendant Cross, who was joined by Defendant Lucas, requested that the court stay discovery until the issue of qualified immunity was decided by the court. Following that filing, Defendants separately filed Motions for Summary Judgment, asserting primarily qualified immunity as a defense.

On August 7, 2008, after the parties completed most of the briefing on the Motions for Summary Judgment, Plaintiff served Defendants with various discovery requests. Defendants refused to respond, noting that the Motion for Stay and Motions for Summary Judgment were still pending. The parties then engaged in a continuing dispute over the matter, and on September 12, 2008, Plaintiff filed a Motion to Compel Discovery. In response, Defendants filed a joint Motion to Strike Plaintiff's Motion to Compel. The court resolved the dispute by permitting limited discovery on the issue of qualified immunity in its Order on November 13, 2008. All proceedings in the case were then stayed until the verdict in the parallel criminal action pending against Defendant Lucas was rendered. Following Defendant Lucas' acquittal, the court established a nine-month period for discovery on the issue of qualified immunity in

response to Plaintiff's Motion to Take Discovery. Plaintiff entered into a protective order prior to the Defendants providing information introduced at Defendant Lee Lucas's criminal trial. Plaintiff has acknowledged receiving all of this material, but alleges it is insufficient. Plaintiff filed a Discovery Plan Concerning Qualified Immunity, seeking to depose all six of the defendants, as well as John Ferster, Dawn Brown, Kimberly Thomas, Perry Wheeler, Jerrell Bray, Blas Serrano, Frank Douglas, Dan George, and Thomas Verhiley. Plaintiff also seeks to serve interrogatories and requests for admission to all of these individuals. Defendants submitted a Memorandum of Law in Opposition to Additional Discovery requesting that no additional discovery be permitted prior to determining the qualified immunity issue. Following a August 31, 2010 telephone conference call on the issue, all discovery was stayed until the court determined by written order what additional discovery, if any, would be permitted.

## II. LAW AND ANALYSIS

Judge Patricia Gaughan of this court recently addressed virtually identical issues regarding qualified immunity in her September 17, 2010 Order in *Westerfield v. The United States of America, et al.*, Case No. 1:07-CV-03518. Plaintiff Westerfield's case contains the same discovery materials provided by the Defendants in this case, and a nearly identical request by Plaintiff for additional discovery to determine the qualified immunity issue. Judge Gaughan found that an extensive amount of material beyond what is usually available to a plaintiff prior to a determination on qualified immunity was already available to Plaintiff. Therefore, only additional limited discovery was necessary. The court agrees with Judge Gaughan's reasoning and adopts the following parts of her Order:

> The issue of qualified immunity is to be decided as early as possible in the course of litigation to ensure that government officials are not subjected to the expense and burdens of discovery. *Harlow v. Fitzgerald*, 457 U.S. [800], 81[7]-19 ([1982]); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Goad v. Mitchell*, 297 F.3d 497 (6th Cir. 2002). That being said, limited discovery may be appropriate where the complaint alleges the violation of a well-established constitutional right and the issue is whether the defendants, in fact, committed the alleged

violation. *See, Crawford-El* 523 U.S. at 598.

Rule 26(b)(2) of the Federal Rules of Civil Procedure vests this Court with broad discretion in framing a discovery plan. Specifically, the rule provides in relevant part as follows,
> (A) By order, the court may alter the limits in these rules on the number of depositions and the interrogatories or on the length of depositions under Rule 30. By order..., the court may also limit the number of requests under Rule 36.
> ([C]) On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules...if it determines that:
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

(Emphasis added).

Plaintiff asks the Court to permit him to propound written discovery and depose 13 individuals. In response, the individual defendants argue that plaintiff possesses a wealth of information. Specifically, plaintiff points out that all but one of the 13 individuals testified extensively at Lee Lucas's criminal trial. In addition, plaintiff possesses over 22,000 pages of materials relating to the alleged misconduct in Mansfield. Defendants further point out that the alleged misconduct had nothing to do with the sole charge for which defendant was convicted.

In response, plaintiff argues that evidence regarding the other individuals charged in the Mansfield drug conspiracy is relevant. According to plaintiff, evidence of defendants' participation in allegedly framing these other individuals shows that it is more likely that defendants were aware that Westerfield was framed. Plaintiff also claims that discovery is necessary to establish that defendants committed *Brady* violations.

Upon review, the Court finds that plaintiff is entitled to limited discovery. In this case, plaintiff alleges the violation of a well-established constitutional right and the issue is whether defendants committed the violation. Thus, limited discovery is appropriate. *See, Crawford-El* 523 U.S. at 598. This Court must balance the interests of defendants in avoiding the expense of discovery if no constitutional violation occurred with the interests of plaintiff in obtaining sufficient evidence to properly defend against a motion for summary judgment based on qualified immunity. On the unique facts of this case, the Court concludes that depositions of individuals who testified at Lee Lucas's criminal trial are not appropriate. Plaintiff may, however, depose Jamal Ansari, a defendant in this matter who did not testify at the trial. In addition, written discovery may proceed. Specifically, the Court finds that plaintiff may propound 20 written interrogatories (including subparts) to each of the individual defendants in this case. Plaintiffs are in possession of a wealth of evidence regarding the alleged misconduct in Mansfield. As all parties note, plaintiff has 4,000 pages of trial

transcripts and 22,000 pages of exhibits. Included among this information are the all investigative reports of the undercover transactions and proffers of the Mansfield defendants, statements of Bray relating to the Westerfield deals, all audio and video recordings of the Mansfield transactions, as well as transcripts of the recordings. This is far more evidence than is generally available to a plaintiff responding to a motion for summary judgment based on qualified immunity.

Plaintiff provides the affidavit of his attorney, who avers that this information is insufficient. With respect to each deposition plaintiff seeks, counsel attempts to identify shortcomings in the trial testimony. By way of example, counsel indicates that defendant Metcalf's trial testimony is insufficient because trial counsel did not "further explore Mecalf's reasons for believing that he needed to testify falsely in order to support the documents generated by others and in order to make his testimony mesh with the other officers." In the same paragraph, however, counsel indicates that Metcalf testified that he lied during the criminal trial of six of the Mansfield defendants and that he did so because "he thought the other officers would as well, and that he wanted to testify consistently with them and with the case report." Similarly, plaintiff recognizes that Metcalf admitted that he signed and swore to a false search warrant affidavit, written by someone else. Plaintiff, however, argues that a deposition is necessary to discover who wrote the affidavit and "who else was involved in perpetrating this fraud on the court...." Plaintiff makes similar arguments with respect to the other witnesses. For example,

- Counsel avers that John Ferster testified that he learned in 2007 that Bray had stolen money given to him for a drug buy and that Verhiley and defendant Ansari knew of the theft when it occurred. Counsel avers that discovery is needed to learn why the "brazen theft" was permitted;

- Counsel avers that John Ferster drafted a 2007 memorandum describing "Lucas' pattern of rule violations and deviations from DEA procedure, as well as his patterns of false reporting, lying about what witnesses told him, [and] taking unauthorized actions...." Counsel avers that further exploration of these allegations is necessary because it is likely to lead to direct evidence that the frame-up conspiracy was intentional;

- Counsel avers that, although defendant Mayer testified that he was personally involved in most deals, he was never asked about "other defendants' involvement in the frame-up conspiracy generally," specific *Brady* material he or other defendants failed to disclose, drugs Bray tried to conceal during one of his controlled buys, and other similar issues;

- Counsel avers that Dawn Brown testified that she recognized Bray as untruthful and that in February 2005 she began taking

-6-

> personal notes. She indicated that she strongly disagreed with operational decisions and that inaccuracies existed in one of Lucas's DEA-6 reports. Counsel avers that she needs to explore "who authored all false reports and who else was involved with, aware of, supportive of, or passive about the inaccuracies in the false DEA-6 report....;"
>
> Counsel's affidavit outlines similar areas of inquiry for each of the proposed deponents. The Court, however, finds that focused interrogatories will enable plaintiff to obtain the information he indicates is lacking from the trial testimony and the trial exhibits. Plaintiff already possesses *significant* evidence regarding the alleged constitutional violations. This Court's ruling will allow plaintiff to propound interrogatories in addition to the 4000 pages of trial transcripts and 22,000 pages of documentary evidence. Given the wealth of evidence already available to plaintiff, 13 open-ended depositions are unnecessary, time consuming, expensive, and will largely duplicate much of the information already available to plaintiff. This Court finds that allowing plaintiff to propound 20 written interrogatories (including subparts) to the defendants who have already testified, in addition to taking the deposition of Jamal Ansari, properly balances the interests of all parties.

(Order, 1:07 CV 3518, ECF No. 104.)

Plaintiff Brown also requests the depositions of two additional individuals, Frank Douglas and Dan George, in his Discovery Plan Concerning Qualified Immunity (ECF No. 125 at 6.). However, in Plaintiff's Counsel's Supplemental Rule 56(f) affidavit, attached to the Discovery Plan, she requests at a minimum, to be allowed the opportunity to direct written discovery and to depose the same thirteen individuals addressed by Judge Gaughan, and named in the nearly identical affidavit submitted in her case. As Plaintiff has not provided information regarding who these two individuals are and how they are necessary to the determination of qualified immunity, the court will not allow Plaintiff to depose them at this time. Based on Plaintiff's stated needs, the court finds the information already provided to Plaintiff, along with being allowed to propound 20 interrogatories (including subparts) to the Defendants and taking Defendant Ansari's deposition, adequately balances the interests of the parties and enables a determination on qualified immunity. If the parties have not already conducted the deposition of Defendant Ansari in Judge Gaughan's case, the court requests that they coordinate the deposition for that case with the one here.

### III. CONCLUSION

For the foregoing reasons, the court denies in part and grants in part Plaintiff's Discovery Plan Concerning Qualified Immunity (ECF No. 125).

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

November 5, 2010